## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARK W. CASTLEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-23-919-PRW** |
| | ) | |
| **KEVIN STITT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Mark W. Castleman ("Plaintiff"), a state prisoner appearing *pro se* and *in forma pauperis* (without prepayment of fees), brings this action under 42 U.S.C. § 1983, alleging civil rights violations. (Doc. 1). United States District Judge Patrick R. Wyrick referred the matter to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 5).

Before the Court is Defendants' Motion to Dismiss brought by ten of the eleven defendants in this action (the "Moving Defendants").[1] (Doc. 24).[2] Plaintiff did not file a response, and the motion is at issue. For the reasons set forth below, the undersigned recommends the motion to dismiss be converted to a motion for summary judgment and that the Court: 1) dismiss the official capacity claims for monetary damages without

---

[1] Defendant Steven Harpe did not participate in the motion, and the record shows that he has not been served. (Doc. 15, at 1).

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination.

prejudice for lack of subject-matter jurisdiction; 2) dismiss the remaining claims without prejudice for failure to exhaust administrative remedies; and 3) alternatively, dismiss with prejudice the portions of Claim Three surviving Eleventh Amendment immunity.

## I.     Plaintiff's Claims and the Moving Defendants' Motion

Plaintiff contends that on January 6, 2021, he was on suicide watch and treated in the mental health unit at the Joseph Harp Correctional Center ("JHCC").  (Doc. 1, at 9). He asserts a medical review board found he needed forced medication in accordance with Oklahoma Department of Corrections ("ODOC") policy OP-140652C.  (*Id.* at 11).  He alleges medical staff "forced medication harmful to him, known by medical staff to be harmful to him."  (*Id.* at 12).

Based on this set of facts, Plaintiff makes three claims against the following defendants:

1.     Kevin Stitt, Governor of Oklahoma, in his official capacity;

2.     Steven Harpe, Director of ODOC, in his official capacity;

3.     David Rogers, Warden of JHCC, in his official and individual capacities;

4.     Patti Stem, JHCC Clinical Coordinator, Medication Review Committee Chairperson, and "mental health for ODOC," in her official and individual capacities;

5.     April Taylor, Behavioral Health Coordinator for ODOC Mental Health, in her official and individual capacities;

6.     Mike McDougal, JHCC Correctional Health Services Administrator ("CHSA"), in his official and individual capacities;

7.     Josh Kimbrell, JHCC Medical Review Board Member and Unit Manager, in his official and individual capacities;

8.      Katherine Weaver, Acting Chief, in her official and individual capacities;

9.      Amanda Webb, JHCC Acting Deputy Warden, in her official and individual capacities;

10.     Janna Morgan, ODOC Head of Mental Health, in her official capacity; and

11.     Dr. Roy Donovan, Review Committee member and JHCC physician.[3]

(*Id.* at 4-7, 17; Doc. 24, at 9).

In Claim One, Plaintiff asserts ODOC OP-140652C violates the due process and equal protection clauses of the United States Constitution.  (Doc. 1, at 8).  Although the forced-medication policy has an appeal mechanism, Plaintiff contends he had no ability to utilize the process.  (*Id.*)  He notes the appeal of the medical review board had to be made in writing within twenty-four hours, but also claims he did not have access to writing materials and was suffering a mental health crisis.  (*Id.* at 11).  So, he had "neither the mental capacity nor the means to appeal in writing."  (*Id.*)  He also contends that he did not have access to a staff representative to assist him because he did not make an appeal in writing.[4]  (*Id.*)  Plaintiff additionally argues that the prison warden failed to review and sign Form DOC 104652C, which means "there was absolutely no oversight of [his] forced medication decision as required by policy."  (*Id.* at 12).  Thus, he contends the "appeal process is wholly inadequate under such circumstances" and violates his constitutional

---

[3] Plaintiff does not state whether he sues Defendant Donovan in his official and/or individual capacities.

[4] And even if Plaintiff had access to a staff representative, he asserts he "has no good faith basis to believe a staff representative would work in his best interests" because "at this forced medication hearing, these same prison staff informed him he was gonna be held down by staff and forced medication."  (Doc. 1, at 12).

rights.  (*Id.* at 11).  As relief, Plaintiff seeks: 1) independent review by the federal government of the ODOC policies and their implementation; and 2) actual and punitive damages in the amount of $1,000,000.  (*Id.* at 9).

In Claim Two, Plaintiff asserts "the Oklahoma Governor, Director of Okla. Dept. of Corrections[,] and Warden of [JHCC] failed to properly train and fulfill their obligation of oversight."  (*Id.*)  He contends that "each of these individuals are responsible for coherent policies to maintain the health and safety of each and every person in their custody and care" as well as "training and making sure policies and procedures are carried out appropriately." (*Id.* at 10, 13).  Plaintiff again notes that OP-140652C requires the warden to approve forced medication, but that the warden failed to do so.  (*Id.* at 9, 14).  He also notes that six members of the board – including Defendants Kimbrell, Webb, Donovan, McDougal, and Weaver – approved forced medication.  (*Id.* at 13).  But he argues Defendants Kimbrell, Webb, and Weaver "have zero medical qualifications," meaning their approval amounted to either a rubber-stamp or making a medical decision.  (*Id.*)  Further, Plaintiff asserts "half the members on this board" violated the Health Insurance Portability and Accountability Act ("HIPAA").  (*Id.* at 14) (citing 42 U.S.C. § 1320d-6(a); 42 C.F.R. § 403.812(c)(2)(i)).  He contends the disregard for oversight and safeguards harmed him because he "was injected with a drug his medical records clearly stated he is allergic to."  (*Id.*)  He also contends he is the victim of a crime.  (*Id.*)  As relief, Petitioner seeks: 1) an immediate federal investigation and complete independent review of the ODOC policies and implementation; 2) "injunctive relief to protect all Oklahoma state prisoners;" and 3) actual and punitive damages in the amount of $1,000,000.  (*Id.* at 10).

4

In Claim Three, Plaintiff asserts deliberate indifference to a serious medical need, in violation of the Eighth Amendment. (*Id.* at 15). He incorporates the facts from Claims One and Two and also states he has a documented history of allergies when taking certain psychotropic medications such as cephalexin, Haldol, sulfamethoxazole, and trimethoprim. (*Id.*) He contends Defendants knew he was allergic to the medication, knew the consequences of administering it to him, and "forc[ed the] drug into [him] anyway," causing him actual harm. (*Id.*)

The Moving Defendants now seek dismissal of each claim. (Doc. 24). Defendants argue: 1) Plaintiff failed to exhaust his administrative remedies; 2) the claims are barred by the statute of limitations; 3) Plaintiff did not adequately allege personal participation or satisfy the requirements of Federal Rule of Civil Procedure 8(a); 4) Plaintiff did not plead sufficient facts to state an Eighth Amendment claim; 5) Plaintiff did not plead sufficient facts to state a due process claim; 6) Plaintiff did not plead sufficient facts to state an equal protection claim; 7) Defendants are entitled to qualified immunity; 8) Defendants are immune from Plaintiff's official capacity claims; 9) Plaintiff is not entitled to injunctive relief; and 10) Plaintiff does not have a private right of action under HIPAA. (*Id.* at 11-26).

## II.    Standard of Review

The Moving Defendants rely on documents outside the complaint to support their motion. Accordingly, the Court should treat the motion as a motion for summary judgment

under Federal Rule of Civil Procedure 56.[5]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When a defendant asserts an affirmative defense – such as a failure to exhaust administrative remedies or statute of limitations – as a basis for summary judgment, he "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 746 (10th Cir. 2014) (internal quotation marks omitted).  "[A] defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).  If the defendant satisfies this burden, the plaintiff would incur a duty to "demonstrate with specificity the existence of a disputed material fact," *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997), or to "show that remedies were unavailable to him as a result of" the actions of prison officials.  *Tuckel*, 660 F.3d at 1254. In the absence of either showing, the defendant would be entitled to summary judgment on the affirmative defense.  *See id.*

---

[5] In its order directing Defendants to prepare and file a Special Report, the Court notified all parties that if Defendants filed a Fed. R. Civ. P. 12(b)(6) motion and relied on materials not attached to or incorporated by reference in the complaint, the Court would convert the motion to dismiss into a motion for summary judgment. (*See* Doc. 9, at 3).  Thus, the Court may convert the motion because Plaintiff "was on notice that, procedurally, he had to defend against summary judgment." *See Whitmore v. Hill*, 456 F. App'x 735, 737 (10th Cir. 2012) (upholding the district court's conversion of the defendants' motion to dismiss into a summary judgment motion after finding the *pro se* prisoner "was on notice that, procedurally, he had to defend against summary judgment").

III.    **Analysis**

    A.    **Defendants in Their Official Capacities are Entitled to Eleventh Amendment Immunity Against Plaintiff's Claims for Monetary Damages.**

The Moving Defendants argue they are entitled to immunity under the Eleventh Amendment on Plaintiff's claims for monetary damages against them in their official capacities. (Doc. 24, at 24-26). The undersigned addresses this argument first because Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." *Fowler v. Stitt*, 104 F.4th 770, 781 n.7 (10th Cir. 2024) (quoting *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019)).

"States enjoy sovereign immunity from suit under the Eleventh Amendment." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). The immunity also applies to arms of the state, *see Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000), and "state officials who are sued for damages in their official capacity." *Williams*, 928 F.3d at 1212. There are three exceptions to Eleventh Amendment immunity: (1) "a state may consent to suit in federal court;" (2) "Congress may abrogate a state's sovereign immunity by appropriate legislation;" and (3) "under *Ex Parte Young*, 209 U.S. 123 (1908) . . . the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation*, 669 F.3d at 1166. Oklahoma has not consented to be sued in federal court, and Congress has not abrogated state sovereign immunity by creating a private right of action under § 1983. *Berry v. Oklahoma*, 495 F. App'x 920, 921-22 (10th Cir. 2012) (citing Okla. Stat. tit. 51, § 152.1); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

As the Governor of Oklahoma, Defendant Stitt is a state official, and because he has been sued for damages in his official capacity, Eleventh Amendment immunity applies. The remainder of the defendants are identified as ODOC officials or employees of a state-run correctional center. "The [Oklahoma Department of Corrections] is . . . shielded by sovereign immunity because it is an arm of the state." *Berry*, 495 F. App'x at 922; *see also Eastwood v. Dep't of Corr. of State of Okl.*, 846 F.2d 627, 631-32 (10th Cir. 1988) ("We conclude that the DOC is an arm of the state and should be entitled to absolute immunity."). Thus, Eleventh Amendment immunity applies to bar Plaintiff's claims for monetary damages against the remaining defendants. *See Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("Because the defendants are employees of the Oklahoma Department of Corrections[,] . . . the Eleventh Amendment applies to the official-capacity claims for damages."). As such, the Court lacks jurisdiction to entertain Plaintiff's claim for monetary damages against the defendants in their official capacities. *See Peterson*, 707 F.3d at 1205; *see also Goesselin v. Kaufman*, 656 F. App'x 916, 917-18 (10th Cir. 2016) (holding, where a plaintiff requested both compensatory and punitive damages, "to the extent [the plaintiff] seeks money damages . . . his claims against Defendants in their official capacities are barred by sovereign immunity").

Thus, Petitioner's official-capacity claims for monetary damages against all Defendants should be dismissed without prejudice for lack of subject matter jurisdiction.[6]

---

[6] Perhaps recognizing the third exception to Eleventh Amendment immunity – an allegation of an ongoing violation and requesting prospective relief – the Moving Defendants did not assert Eleventh Amendment immunity as it relates to Plaintiff's request

*See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) ("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect.").

### B.    Plaintiff Failed to Exhaust His Administrative Remedies, and Thus His Claims Must Be Dismissed.

The Moving Defendants contend Plaintiff failed to exhaust his administrative remedies with regard to his three claims.  (Doc. 24, at 11-14).  The undersigned agrees and recommends Plaintiff's remaining claims be dismissed without prejudice on this basis.

### 1.    Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Because exhaustion of available remedies "is mandatory under the PLRA[,] . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without

---

for injunctive and declaratory relief regarding the legality of the ODOC appeal procedures regarding forced medication.  Liberally construing the Complaint, Plaintiff has a history of mental health issues, and the forced medication policy is still in effect.  At this stage in the proceedings, the undersigned does not recommend dismissal based on Eleventh Amendment immunity for Plaintiff's claims for injunctive and declaratory relief. *See e.g.,Okla. Observer v. Patton*, 73 F. Supp. 3d 1318, 1322 (W.D. Okla. 2014) ("The DOC policy which plaintiffs challenge is now in effect and will remain effective until modified, which means it will govern the upcoming executions and is intended to do so. As such, there is a 'threat of an ongoing violation.'").  However, as outlined below, those claims are unexhausted and should be dismissed on that basis.

imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  This means a prisoner must use "all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)."  *Id.* at 90 (internal quotation omitted).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   And the exhaustion requirement applies to claims requesting declaratory relief.  *See Sayed v. Page*, 851 F. App'x 842, 844-45 (10th Cir. 2021) (concluding that a plaintiff failed to properly exhaust his claim for declaratory relief); *Long v. Johnson*, 2022 WL 17177348 (D. Kan. Nov. 23, 2022) (same); *Sperry v. Roberts*, 2021 WL 3668387, at *7-8 (D. Kan. July 13, 2021) (finding the plaintiff failed to exhaust the sole remaining claims for injunctive relief); *Farris v. Frazier*, CIV-12-1099-W, 2014 WL 3749142, at *14 (W.D. Okla. July 29, 2014) (granting summary judgment for failure to exhaust all claims, including all official capacity claims seeking prospective declaratory and injunctive relief).  But, as noted above, the PLRA's exhaustion requirement is limited to such administrative remedies as are <u>available</u> to be exhausted.  "Administrative remedies are deemed unavailable if, among other things, 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  *May*, 929 F.3d at 1234 (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)). The court liberally construes grievances filed by unrepresented inmates. *Greer v. Dowling*, 947 F.3d 1297, 1302 (10th Cir. 2020).

As noted above, "a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies.'" *May*, 929 F.3d at 1234 (quoting *Tuckel*, 660 F.3d at 1254). But "once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *Id.* (quoting *Tuckel*, 660 F.3d at 1254). And "in a prisoner case involving the defense of failure to exhaust, a district court should, before trial, resolve all disputed issues of law and fact that are not intertwined with the merits of the claim." *Estrada v. Smart*, --- F.4th ---, 2024 WL 3420365, at *5 (10th Cir. July 16, 2024).

## 2.    The ODOC Grievance Procedure

The ODOC Operations Memorandum OP-090124 establishes the offender grievance process. (Doc. 23, at Ex. 23; Doc. 24, at 12). The first step in the grievance process is "informal resolution," which includes submitting a "Request to Staff" ("RTS") if the complaint is not resolved. (Doc. 23, at Ex. 23, at 8-11). The RTS "must be specific as to the complaint, dates, places, personnel involved and how the inmate/offender was affected." (*Id.* at 9). Further, the RTS must be submitted within seven days of the alleged incident. (*Id.*) Upon receipt, a staff member then has ten days to respond in writing. (*Id.* at 10). If the inmate has not received a response in thirty days, he may file a grievance within sixty days of the original submission to the reviewing authority to assert a lack of response. (*Id.* at 10-11).

If the issue is not resolved at the informal-resolution stage, the next step is submitting a grievance form to the proper reviewing authority.[7] (*Id.* at 11). The grievance must be received by the reviewing authority within fifteen days from the date the inmate received the response to the RTS. (*Id.*) While this deadline can be extended, "under no circumstances will the grievance be accepted after 60 days of the incident or the date of the response to the" RTS. (*Id.* at 12). The reviewing authority has twenty days to respond to the grievance, although this deadline can be extended by twenty days upon notice to the inmate in writing. (*Id.* at 13). If the reviewing authority does not respond within thirty days, the inmate can send a grievance to the Administrative Review Authority – but this grievance may not be sent later than sixty days after submitting the grievance to the reviewing authority. (*Id.*)

The final step in the grievance procedure is the appeal, which must be based on newly discovered or available evidence or probable error committed by the reviewing authority. (*Id.* at 15). The inmate must submit the appeal within fifteen days after receipt of the reviewing authority's decision. (*Id.*)

### 3.    Plaintiff's Use of the ODOC's Administrative Remedies

On July 28, 2023, Plaintiff submitted an RTS to Defendant McDougal. (Doc. 1, at Ex. 3, at 3-4; Doc. 23, at Ex. 26, at 2-3). Referencing various orders from January 5 and 6, 2021, Plaintiff asserted he was given Haldol despite his medical file noting he was

---

[7] The reviewing authority is "the facility/unit head or facility correctional health services coordinator (CHSA) where the incident occurred and to whom the grievance will be first submitted." (Doc. 23, at Ex. 23, at 4).

allergic to the medication.  (Doc. 1, at Ex. 3, at 3; Doc. 23, at Ex. 26, at 2).  He contended he told a nurse he was allergic to prolixin, Haldol, and anything that requires Cogentin. (Doc. 1, Ex. 3, at 4; Doc. 23, at Ex. 26, at 3).  He asserted that nobody listened when he informed them at the forced medication hearing that he would take another type of medication.  (Doc. 1, at Ex. 3, at 4; Doc. 23, at Ex. 26, at 3).  Thus, he stated that he "ended up letting Mark Henanderzon give [him] a shot so that yal would not have the prison c/o's suit up and run in on [him] and hold [him] down and give [him] the shot" so that he "wouldn't hurt any c/o's and [he] wouldn't get hurt."  (Doc. 1, at Ex. 3, at 4; Doc. 23, at Ex. 26, at 3).  He then noted that he "ended up having to go to medical" because he had a reaction to medication, causing his face and tongue to swell, necessitating medication. (Doc. 1, at Ex. 3, at 4; Doc. 23, at Ex. 26, at 3).  Plaintiff requested that the forced medication committee "check ppl's inmate's allergies before giving and ordering forced meds onto inmates that way this does not keep happ[en]ing."  (Doc. 1, at Ex. 3, at 3; Doc. 23, at Ex. 26, at 2).

On August 23, 2023, Plaintiff received a response to his RTS from Defendant McDougal, stating: "Mr. Castleman, you currently have no prescribed medication and your chart reports you are allergic to Haldol and prolixin."  (Doc. 1, at Ex. 3, at 3; Doc. 23, at Ex. 26, at 2).

On August 29, 2023, Plaintiff submitted another RTS to Defendant McDougal, stating he could not read the response from August 23, 2023, and sought that it be rewritten in print.  (Doc. 1, at Ex. 3, at 5).  Although no response was given to this RTS, Plaintiff notes that the original RTS response was read to him.  (*Id.*)

Plaintiff has not submitted any properly submitted grievance appeals to the medical administrative review authority.  (Doc. 23, at Ex. 27).

### 4.    Plaintiff Failed to Exhaust His Administrative Remedies.

The Moving Defendants argue that Plaintiff failed to properly exhaust his administrative remedies.  (Doc. 24, at 11-14).  Specifically, the Moving Defendants assert that Plaintiff did not timely initiate the grievance process and did not complete all stages as required by the ODOC grievance procedure.  (*Id.* at 13-14).  The undersigned finds Plaintiff failed to exhaust his administrative remedies because he did not complete all stages of the grievance procedure.[8]

Plaintiff filed an RTS, but he did not complete all steps of the grievance procedure because he did not file a grievance or an appeal.  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Liberally construing his argument, Plaintiff asserts he did not fail to exhaust his administrative remedies because he was "happy with" the response to the RTS.  (Doc. 1, at Ex. 3, at 1).  Specifically, he asserts "the issue was looked into and [he is] sure they will be more in tone with other's allergies." (*Id.*)  Because he "properly invoke[d] the first stage of inmate grievance process and obtain[ed] available relief," he contends he exhausted his

---

[8] Although not raised by the Moving Defendants, the undersigned notes that Plaintiff's RTS did not encompass the claims raised in Claims One and Two of the instant Complaint.

administrative remedies. (*Id.* at 2). Plaintiff cites authority in support of his argument, but the undersigned finds it is either distinguishable or inapplicable.

In *Ross v. Cnty. of Bernalillo*, the Tenth Circuit held that "once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." 365 F.3d 1181, 1187 (10th Cir. 2004), *abrogated on other grounds by Jones*, 549 U.S. 199. So, where a prisoner complained that the detention center shower lacked a shower mat and the prison responded by providing a shower mat after the first stage of the grievance procedure, the court determined he did not need to "resort to step two of that process . . . . because he was successful in the first stage of the grievance process, and nothing in the record suggest[ed] that there was any further relief whatsoever available through [the detention center's] procedures." *Id.*

The facts in this case are distinguishable. In the RTS, Plaintiff described the January 2021 order regarding forced medication, his discussions with medical personnel regarding his allergies to certain medications, his being given medication to which he is allergic, and the facial swelling. (Doc. 1, at Ex. 3, at 3-4). He requested the issue be "looked into" and the medical committee make changes so that they would check the allergy status of inmates before giving or ordering forced medication. (*Id.* at 3). The disposition provided by Defendant McDougal simply stated that Plaintiff was not currently prescribed any medication and noted that his medical chart now reflects his allergies to two types of medication. (*Id.*) Unlike the detention center's response in *Ross*, Plaintiff did not obtain all (or arguably any) of his requested relief. That Plaintiff's issue was not resolved at the RTS stage is critical because under OP-090124, "a grievance will be used to formally

address complaints/issues that are not resolved by informal attempts." (Doc. 23, at Ex. 23, at 4). And while Plaintiff was "happy" with the response, believed the issue was looked into, and is "sure" prison officials will be more cognizant of allergies in the future – nothing in Defendant McDougal's response suggests Plaintiff's issue was actually resolved. Thus, *Ross* does not dictate a finding that Plaintiff exhausted his administrative remedies.

Likewise, *Castleman v. Marler* – a non-binding case from the United States District Court for the Eastern District of Oklahoma in which Plaintiff sued prison officials – is distinguishable. 2023 WL 4405454 (E.D. Okla. July 7, 2023) ("*Castleman I*"). There, Plaintiff submitted an RTS noting that he was stabbed four times by his cellmate and the medical records he obtained showed he did not receive proper medical care. *Castleman I*, No. CIV 22-235-RAW-JAR, Request to Staff, Doc. 26-15, at 4 (E.D. Okla. Feb. 8, 2023). In the RTS he requested: "these actions & choices should be investigated, and all video's be reviwed and saved, hand held recorder and all other camer video's in medical." *Id.* The response to the RTS stated: "Your issue will be looked into. Thank you for sending this request." *Id.* After two defendants moved to dismiss based on Plaintiff's failure to exhaust, the court found that "Plaintiff apparently received his requested relief . . . and he was not required to continue in the administrative remedies process." *Castleman I*, 2023 WL 4405454, at *5. But, as addressed above, the response to the RTS in this case did not provide Plaintiff with his requested relief. Plaintiff asked prison staff to "look[] into" the January 2021 incident, but the response to the RTS shows only that prison staff reviewed his current medical file. (Doc. 1, at Ex. 3, at 3). And unlike *Castleman I*, prison staff did

not promise to investigate further. Thus, the undersigned finds *Castleman I* is distinguishable and unpersuasive.

Finally, Plaintiff cites *Ray v. Jones*, No. CIV-06-319-C, 2007 WL 397084 (W.D. Okla. Feb. 1, 2007). (Doc. 1, at Ex. 3, at 2). *Ray* involved a wildly different set of facts than present here – the plaintiff there attempted to exhaust his remedies over a period of nine months, the court determined that the plaintiff was advised that the grievance procedure did not provide an available administrative remedy, and administrative remedies were available through a separate internal affairs investigative process. *Ray*, 2007 WL 397084 *6-10. Because a prison official was demoted and received a pay cut, the court found that Plaintiff "actually received administrative relief." *Id.* at *10. The undersigned does not find *Ray* helpful in addressing Plaintiff's claims.

Thus, Plaintiff failed to exhaust his administrative remedies because he failed to complete all steps of the grievance procedure. Accordingly, the undersigned recommends the Court should grant judgment in favor of the Moving Defendants for the remaining claims – those surviving the Eleventh Amendment immunity analysis – and dismiss them without prejudice. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be without prejudice."). Additionally, the Court should grant judgment in favor of Defendant Harpe and dismiss the claims remaining against him for the same reason. *See Smith v. Jones*, 606 F. App'x 899, 902 (10th Cir. 2015) (holding "the district court properly granted summary judgment based on non-exhaustion to even those Defendants who had not formally moved for it").

**C.    Alternatively, Claim Three is Untimely.**

Even if Plaintiff had exhausted Claim Three – his Eighth Amendment claim for deliberate indifference to a serious medical need – it should be dismissed because he did not timely file it. The statute of limitations for § 1983 claims is derived from the applicable state law for private tort actions. *Gilyard v. Gibson*, 612 F. App'x. 486, 487 (10th Cir. 2015); *Robbin v. City of Santa Fe*, 583 F. App'x. 858, 863 (10th Cir. 2014). Oklahoma law establishes a two-year statute of limitations period for tort actions. Okla. Stat. tit. 12, § 95. Thus, "the statute of limitations in a § 1983 action filed in Oklahoma is two years from the time the cause of action accrued." *Bedford v. Rivers*, 176 F.3d 488 (10th Cir. 1999). According to federal law, the statute of limitations in a § 1983 action begins to run at the time "'facts that would support a cause of action are or should be apparent.'" *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (quoting *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 645 (5th Cir. 1988)); *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). In other words, time accrues from the moment Plaintiff "knows or has reason to know of the injury which is the basis of the action." *Baker*, 991 F.2d at 632.

Plaintiff asserts officials at JHCC ordered that he be administered Haldol on January 5 or 6, 2021. (Doc. 1, at 9, 11;[9] *id.* at Ex. 3, at 3). It is undisputed that Plaintiff was administered medication on January 8, 2021, which resulted in Plaintiff's tongue and face swelling. (Doc. 1, at Ex. 3, at 4) (Plaintiff's RTS noting that he had an allergic reaction in which his face and tongue swelled and contending prison staff only cared about ordering

---

[9] Plaintiff incorporated the facts contained in Claims One and Two into Claim Three. (Doc. 1, at 15).

Haldol or prolixin); (Doc. 23, at Ex. 17, at 98) (medical record noting that Plaintiff "took a prolixin shot and had oral edema afterward" and "his tongue and left side of face swole and he had difficult time swallowing"). Thus, the last day Plaintiff could have timely filed this action was January 9, 2023.[10]  But Plaintiff did not file this action until October 6, 2023 (Doc. 1, at 10) – over ten months after the two-year statute of limitations expired. Therefore, unless tolling principles operate to extend the statute of limitations, Plaintiff's claim is time-barred.

Because the applicable statute of limitations for a § 1983 claim is derived from Oklahoma law, "state law [also] governs the application of tolling in a civil rights action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004); *see also Fratus*, 49 F.3d at 675 (applying state law tolling rules in § 1983 context).  In *Alexander*, the Tenth Circuit stated:

> In general, Oklahoma permits the tolling of a statute of limitations in two circumstances.  First, the existence of a "legal disability" provides proper grounds for equitable tolling.  *See* Okla. Stat. tit. 12 § 96 (West 2000). Although the exact definition of this term remains unclear, Oklahoma courts have applied this provision only for plaintiffs whose competency is impaired or who have not reached the age of majority.  *See e.g., Lovelace v. Keohane*, 831 P.2d 624, 629 (Okla. 1992) (finding that those who could conduct their own business affairs over time are sufficiently competent to render them ineligible for "legal disability" tolling).
>
> Second, the Oklahoma discovery rule tolls the statute of limitations "until an injured party knows of, or in the exercise of reasonable diligence, should have known of or discovered the injury, and resulting cause of action."  *Id.* Therefore, if defendants engage in "false, fraudulent or misleading conduct" calculated to lull plaintiffs into sitting on their rights, the limitations period

---

[10] January 8, 2023, was a Sunday.

> may not be triggered.  *Jarvis v. City of Stillwater*, 732 P.2d 470, 473 (Okla.
> 1987); *see also Hurt v. Garrison*, 133 P.2d 547, 550 (1942) (holding a statute
> of limitations tolled during a period of fraudulent concealment).

*Alexander*, 382 F.3d at 1217 (emphasis in original).

Plaintiff bears the burden of showing legal disability.  *Gilyard*, 612 F. App'x at 488.  "Under Oklahoma law, the term 'legal disability' may include mental incapacity."  *Maynard v. Casebolt*, 1997 WL 259450, at *2 (10th Cir. May 19, 1997) (citing *Walker v. Pacific Basin Trading Co.,* 536 F.2d 344, 347 (10th Cir.1976); *Robertson v. Robertson*, 654 P.2d 600, 606 (Okla. 1982)).  But the presence of a mental health issue alone does not toll the statute of limitations if the plaintiff can conduct his own affairs.  *Lovelace v. Keohane*, 831 P.2d 624, 629 (Okla. 1992) (holding, where the plaintiff had multiple-personality disorder, that "no matter how the psychological term or description is couched, plaintiff is not under legal disability if able to conduct her business affairs for a number of years").  Here, Plaintiff alleges he was administered forced medication to resolve a psychological issue in early January 2021.  At that time, Plaintiff was arguably under a legal disability as contemplated by Oklahoma law.  But Plaintiff makes no allegation of disabling mental health issues following the administration of the medication.  Instead, he contends that he suffered a swollen tongue and face.  (Doc. 1, at Ex. 3, at 4).  In short, Plaintiff does not meet his burden of showing that he was under a legal disability through October 6, 2021, and he is not entitled to any tolling on that basis.

Plaintiff is not entitled to tolling based on the discovery rule, either.  Plaintiff knew or should have known of his injury in January 2021, after his forced medication and allergic reaction.  When describing his exhaustion efforts, Plaintiff notes that he filed the RTS "as

soon as [he] got a complete copy of all med. records to do with this issue, to fully see how rights and laws were" violated." (Doc. 1, at Ex. 3, at 1). To the extent Plaintiff asserts he did not know about a potential legal claim until he received those medical records in 2023, it does not necessarily mean his limitations period is tolled because tolling ends when *either* Plaintiff knew *or should have known* of the injury and resulting cause of action. *See Alexander*, 382 F.3d at 1217. Plaintiff did not allege any continuing mental health issue that would have impeded his ability to request these medical records or to learn of his cause of action before October 6, 2023. Thus, the discovery rule does not make the Complaint timely with regard to Claim Three.

Because Plaintiff did not file the Complaint within two years of his injury and tolling does not apply, Claim Three is barred by Oklahoma's two-year statute of limitations. Thus, Claim Three can alternatively be dismissed with prejudice because Plaintiff failed to file this action within the limitations period.

## IV.    Recommended Ruling and Notice of Right to Object.

For the reasons discussed above, the undersigned recommends the motion to dismiss be converted to a motion for summary judgment and the court: 1) dismiss the official capacity claims for monetary damages without prejudice for lack of subject-matter jurisdiction; 2) dismiss the remaining claims without prejudice for failure to exhaust administrative remedies; and 3) alternatively, dismiss with prejudice the portions of Claim Three surviving Eleventh Amendment immunity.

**The court advises the parties of their right to object to this Report and Recommendation by September 17, 2024,** under 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 27th day of August, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE